IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jeremy Dickens, | ) | Case No.: 2:23-cv-05707-RMG-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Publix Super Markets, Inc., | ) | **COMPLAINT** |
| | ) | |
| Defendant. | ) | |

Comes now the Plaintiff by and through counsel and would respectfully show the following:

## I.     INTRODUCTION

This is a case of disability discrimination in employment, against Publix supermarkets. Plaintiff has a qualifying disability under the Americans with Disabilities Act and was discriminated against in the course of his employment with Publix over a 14-year period.

## II.     PARTIES AND JURISDICTION

1. Plaintiff is presently a citizen and resident of the State of Kentucky.

2. Defendant Publix Super Markets, Inc. (hereinafter referred to as "Publix") is a foreign corporation that owns and operates numerous grocery stores in South Carolina, including a grocery store located at 8409 Dorchester Road in North Charleston, South Carolina and, as such, is subject to the jurisdiction of this Court.

3. That the acts, omissions, and conduct of Publix, as set forth herein, by and through its manager, agents, servants and employees, which give rise to this present cause of action, occurred on or in the Publix stores located in Charleston County between February 2006 and August 2020 including at the Publix location on Dorchester Road in North Charleston, SC.

4. Publix employs over 15 employees, and is an employer within the scope the Act and is subject to the requirements and prohibitions of that Act.

5. Plaintiff was formerly employed by the Defendant and has a qualifying disability under the Act.

6. All parties and subject matter herein are within the jurisdiction of this Honorable Court.

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff, Jeremy Dickens, timely filed an allegation of disability discrimination, and retaliation with the South Carolina Human Affairs Commission and the sister Federal Administrative body the Equal Employment Opportunity Commission, alleging that he had been discriminated against on the basis of his disability,

8. Plaintiff's administrative charge also claimed that he had been retaliated against for engaging in protected activity under the relevant statutes, state law and company policy.

9. Plaintiff was issued a Notice of Right to Sue letter by the Equal Employment Opportunity Commission on August 10, 2023.

10. The claims presented by the Plaintiff are timely as he is filing suit within 90 days of the receipt of the notice of the right to commence action and submits that he has satisfied all private administrative and judicial pre-requisites to the institution of this action.

### IV. STATEMENT OF FACTS

11. The Defendant, hereinafter Publix, is a national employer engaged in the grocery industry and having numerous stores in the Charleston, South Carolina region. This includes stores located at 8409 Dorchester Road in North Charleston, South Carolina; 3642 Savannah Highway, West Ashley, Charleston, South Carolina;

Johns Island, Charleston, South Carolina; 1585 Central Avenue, Summerville, South Carolina.

12. Plaintiff entered a part-time employment arrangement with Publix in February 2006 when he was in high school.

13. The Defendant offered to pay Plaintiff to perform certain duties and responsibilities and Plaintiff accepted the offer, and performed the duties, creating a contract for employment.

14. Between 2006 and 2020 Plaintiff was assigned to several different stores.

15. While working at Publix, after graduating from high school Mr. Dickens was able to attain additional education and complete a Bachelor's degree.

16. Although he performed various tasks during his tenure, Plaintiff's position was listed as PT Front Service Clerk for most of his tenure, although he briefly had the job description of Deli Clerk in 2007.

17. At the time of his separation from employment in August 2020 Plaintiff's job was PT Front Service Clerk.

18. The essential functions of the Front Service Clerk are greeting customers and answering their questions; bag groceries; take customer carts to the parking lot and unload groceries into customer vehicles; carry bags to customer vehicles when necessary; helps customers locate products throughout the store; restock bags; retrieve shopping carts from the parking lot; assist in cleaning duties as assigned; assists in other duties as assigned.

19. At all relevant times herein Mr. Dickens was qualified for his position.

20. At all relevant times herein, Mr. Dickers was able to perform the essential functions of his job.

21. Plaintiff was working for the Defendant's Dorchester Road store at the time of his separation from employment.

22. At the time of separation from employment Plaintiff was earning $10.25 per hour.

23. At the time of Plaintiff's separation from employment his primary supervisor was assistant manager Jared Lott.

24. Mr. Dickens was not given any specific training or retraining for his employment and worked with non-disabled employees throughout his employment including at his final assignment.

25. Defendant was aware of Plaintiff's disabilities from the outset of his employment having disclosed the same as early as February 2006.

26. With regard to Mr. Dickens's disabilities, Plaintiff suffers from hearing loss and autism.

27. Because of these disabilities, Mr. Dicken's required reasonable accommodations.

28. Autism and hearing loss are qualifying disabilities under the ADA.

29. Publix regarded Mr. Dickens have having a mental and physical disability under the ADA.

30. Mr. Dickens had a record of having a mental and physical disability under the ADA

31. Plaintiff requested accommodation related to his hearing and autism disabilities.

32. These disabilities were disclosed to Publix repeatedly by Plaintiff, his parents, and by a representative of the Coastal Autism Center, Susan Callahan, who came to the employer to provide information and education on Plaintiff's disabilities.

33. The Plaintiff also provided Publix a letter from a doctor at MUSC who specializes in autism setting forth the accommodations the Mr. Dickens required.

34. Some of the accommodations requested were not being given multiple tasks at the same time to complete and needing lists and clear instructions for tasks.

35. Plaintiff was supervised by dozens of managers at Defendant Publix, and was required to inform and reeducate each on the nature of his conditions and disabilities, and need for accommodation, despite the employer being aware of the same and Plaintiff requesting accommodations related thereto.

36. Publix repeatedly required Plaintiff to prove he had a disability and verify what tasks he should be performing and was he was capable of performing despite the fact that Publix was already aware of the employee's disabilities and need for accommodation.

37. As early as 2006 Plaintiff started reporting receiving unequal treatment from his supervisors, being the subject of belittling comments, harassment and verbal penalties, discipline and chastisement including when he needed assistance on an unfamiliar task from his supervisor.

38. The Plaintiff and his parents made repeated internal complaints to Publix regarding harassment and bullying by Plaintiff's peers and supervisor, due to his perceived social awkwardness, direction following, and slowness, which was in reality due to his disability and or lack of training,

39. Plaintiff and his family escalated these complaints to the corporate level on several occasions.

40. As a result, Dickens was retaliated against at work with disciplinary write-ups and was told that it was his own fault because he reported discrimination.

41. For example, Publix has an open-door policy. Plaintiff was approached by a District Manager while he was working and during the conversation Mr. Dickens stated that he was interested in better jobs and career opportunities at Publix. Plaintiff was taken to the office and reprimanded for asking questions to the District Manager, although there is not rule prohibiting this and other non-disabled persons were not reprimanded in a similar manner for talking to the District Manager.

42. As a result of the Plaintiff's reports of discrimination and unfair treatment, including to Plaintiff's final Assistant Manager Jared Lott, Mr. Dickens came under increased scrutiny and discipline, and subject to harsher employment conditions than non-disabled persons.

43. When Plaintiff reported harassment, bullying and being the object of jokes by co-workers to Assistant Manager Lott, Lott told Plaintiff that it was his own fault that co-workers being mean to him.

44. Assistant Manager Lott knew that Mr. Dickens had autism and hearing impairment.

45. Publix did not investigate Plaintiff's complaints and no staff member was counseled or disciplined despite Publix having policies against discrimination, bullying and retaliation.

46. Plaintiff was disciplined and chastised repeatedly for behavior that is consistent with his disabilities and suffered negative employment actions such as low ratings, failure to promote and receipt of the most undesirable tasks such as cleaning restrooms when there was assigned maintenance staff for those tasks.

47. When Plaintiff asked questions or complained Assistant Manager Lott called him a "pain in the ass" and told him he was a liability to Publix and that he needed to quit.

48. Mr. Dickens and his father were concerned about Assistant Manager Travis Cross and Assistant Manager Jared Lott's failure to accommodate his disabilities.

49. In an effort to get his managers to accommodate him, on or about December 12, 2019, Mr. Dickens submitted to Assistant Manager Travis Cross a physician's certification setting forth his mental disabilities and how these disabilities impacted him.

50. Instead of engaging in the interactive process or accommodating Mr. Dickens, Mr. Cross and Mr. Lott escalated the harassment of him and negative and disparate treatment.

51. Their intention was to force Mr. Dickens to resign.

52. In his final review By Jared Lott and Travis Cross in February 2020, the Plaintiff was not given a raise and many of the criticisms related to or arose from his documented disabilities.

53. Plaintiff received an unacceptable rating in his 2020 review from Lott and Cross for disability related alleged failures such as that he needed directions, needed

reminders, needed to have specific tasks assigned, that he avoided personal interactions and was socially awkward.

54. Plaintiff received this poor review although Publix was on notice of the Plaintiff suffered from autism and hearing loss.

55. Publix failed to accommodate Plaintiff by providing clear instruction or directions.

56. Plaintiff was penalized by Publix because some social interactions are difficult for persons with hearing issues and autism as well as for customers and co-workers who may prefer not to interact with a person with a disability.

57. Disability discrimination is prohibited even if customers or co-workers prefer to deal with a person who does not have any disabilities.

58. Plaintiff noted in his section of the 2020 review in response to the question -how can your manager help you..?- with the following request: Keep giving detail advice on how to do things better….

59. Publix knew or should have known that this was a request for disability accommodation.

60. Although Mr. Dicken's disabilities and need for accommodation were known to management, Publix did not engage in the interactive process with him or accommodate him.

61. The Plaintiff did not receive any assistance from management following this request and in fact his situation continued to deteriorate and he continued to be counseled for symptoms of his disability despite his request for assistance and accommodation.

62. The Plaintiff may have been different, but he was capable of performing his job and had been doing so for over a decade.

63. Plaintiff left the employment of the Defendant in August 2020, when he was instructed to quit by Lott who told him he was a liability to the Company, that that every time Mr. Dickens worked there was a problem, that it was intolerable working with Dickens and that Dickens had to quit.

### V.  FOR CAUSE OF ACTION – DISABILITY DISCRIMINATION

64. The Plaintiff realleges the foregoing allegations as if set forth again verbatim.

65. Plaintiff had autism and hearing loss, which was well known to the employer.

66. Hearing loss and autism are qualifying disabilities under the ADA.

67. Plaintiff was qualified for his position and could perform the essential functions of his job.

68. Plaintiff requested reasonable accommodations, that were not an undue hardship and would allow the Plaintiff to continue to perform the essential functions of his job.

69. Defendant failed to engage in the interactive process with Plaintiff regarding his disability and need for accommodation.

70. Defendant failed to provide reasonable accommodation to the Plaintiff, including acting in contravention of its internal policies and procedures.

71. Rather than accommodate his disability, Plaintiff was subjected to a hostile and discriminatory environment by being made fun of, ridiculed, being the target of jokes, being written up and assigned to tasks that were outside his job

description in that he was not trained or were punitive and menial such as cleaning the restrooms, parking lot or sitting where he was told without moving.

72. Defendant's actions resulted in negative and disparate treatment of Plaintiff.

73. Granting accommodation would not have created an undue hardship for the Defendant.

74. At no time did Publix determine that Mr. Dickens was a direct threat to himself or others.

75. Publix discharged the Plaintiff because of his disability.

76. Defendant's constructive discharge of the Plaintiff was discrimination against a Qualified Individual with a Disability because of a disability.

77. Publix knew, or should have known, of its obligations under the ADA.

78. Publix knew, or should have known, that its actions violated the ADA and still knowingly committed the violations.

79. As such, the conduct as alleged herein violates the ADA and defendant's conduct has resulted in the creation of a discriminatory and hostile environment as to Plaintiff based on his status as a disabled person and Defendant's policies and enforcement thereof has resulted in a disparate impact on the Plaintiff.

80. As a result of Publix's knowing and willfully unlawful actions, the Plaintiff has suffered damages (including but not limited to physical and mental distress, loss of income and benefits, costs and attorney's fees and other actual and punitive damages).

81. The Plaintiff seeks actual and punitive damages, costs and attorney's fees in such amounts as are just and proper as well as other relief available from this Court.

**WHEREFORE,** the Plaintiff prays for judgment against the Defendant for all injuries and damages, punitive damages, fees and costs and equitable remedies set forth in this complaint and/or allowed, provided for or permitted by the common law or statutory law in such an amount as shall be determined by the finder of fact under the evidence presented at trial, and for further relief as the Court may deem just and proper.

FURTHER, THE PLAINTIFF DEMANDS A TRIAL BY JURY.

Respectfully submitted,

**s/ Jennifer Munter Stark**
Jennifer Munter Stark, Esq. FID 9364
210 Wingo Way #300
Mount Pleasant, SC 29464
(843) 972-0004, (843) 972-0006 (fax)
jmunterstarklaw@gmail.com

s/**David A. Nauheim**
David A. Nauheim
Federal Court ID No. 12551
*david@nauheimlaw.com*
NAUHEIM LAW OFFICE, LLC
101 Sycamore Ave
Charleston, SC 29407
Tel: 843 534-5084
Fax: 480 247-5861

ATTORNEYS FOR THE PLAINTIFF